UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-cv-23110-WPD/Becerra

MICHAEL MOEBIUS,

    Plaintiff,

v.

KFIR MOYAL, KFIR MOYAL ART
GALLERY, INC., CARZA ART, LLC,
and JOHN AND JANE DOES 1 through
10, representing the unknown current and
former members of CARZA ART, LLC,

    Defendants.
_____/

### AMENDED[1] OMNIBUS REPORT AND RECOMMENDATION[2] ON DEFENDANTS' MOTION TO QUASH WRITS OF GARNISHMENT AND DEEFENDANTS' MOTION TO RATIFY, ADOPT AND APPROVE SETTLEMENT AGREEMENT

**THIS CAUSE** came before the Court on Defendants, Kfir Moyal ("Moyal") and Kfir Moyal Art Gallery, Inc.'s ("Moyal Art Gallery") (collectively "Defendants"), Motion to Quash Writs of Garnishment, Vacate Order Granting Leave to Inspect Safe Deposit Box, and for Disgorgement of Funds in Excess of Settlement Amount (the "Motion to Quash"), ECF No. [104]. Plaintiff, Michael Moebius ("Plaintiff"), filed his Memorandum of Law in Opposition (the "Opposition"), ECF No. [105], and Defendants filed their Reply, ECF No. [107]. On August 13, 2021, the Parties presented oral argument on this matter. ECF No. [112]. After the hearing,

---

[1] The Court's Omnibus Report and Recommendation, ECF No. [121], is amended to address Defendants' Reply to Plaintiff's Memorandum in Opposition to Plaintiff's Motion to Ratify, Adopt and Approve Settlement Agreement, ECF No. [120].

[2] This matter was referred to the undersigned by the Honorable William P. Dimitrouleas, United States District Judge, "for appropriate disposition or report and recommendation." ECF Nos. [110], [118].

Defendants filed their Motion to Ratify, Adopt and Approve Settlement Agreement ("Motion to Ratify"), ECF No. [117], Plaintiff filed his Opposition, ECF No. [119], and Defendants filed their Reply, ECF No. [120]. Upon due consideration of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Defendants' Motions be **DENIED**.

## I.     PROCEDURAL HISTORY

This case relates to Defendants' alleged infringement on Plaintiff's copyrights. *See* ECF No. [1]. On March 13, 2017, the Clerk of Court entered a default as to all Defendants. ECF No. [63]. On March 22, 2017, the District Court entered a Default Final Judgment and Permanent Injunction, awarding Plaintiff $332,340.69, ordering that Defendants be permanently enjoined from infringing on Plaintiff's copyrights, and closing the case. ECF No. [67] at 1–2. Although Defendant Moyal initially moved to set aside the Default and Default Final Judgment, ECF No. [68], he subsequently withdrew his Motion to Set Aside, ECF No. [72].

Based on the Default Final Judgment, Plaintiff procured the issuance of five writs of garnishment. *See* ECF Nos. [74]–[78]. Defendants did not object or file any response. In response to one of the writs, Bank of America advised as to the existence of three bank accounts in Defendant Moyal's name, which contained a total of $33,021.78. ECF No. [86] at 1–3. Defendants did not object or file any response. On October 29, 2020, Plaintiff filed a Notice to Defendants of Answer of Garnishee specifically pertaining to Bank of America. ECF No. [94]. Defendants did not object or file any response. Instead, on November 22, 2020, Defendant Moyal filed a Suggestion of Bankruptcy, regarding a pending petition under Chapter 13. ECF No. [99]. The bankruptcy case was dismissed on January 13, 2021. *See* Order Dismissing Case, *In re Kfir Moyal*, No. 20-22770-LMI (S.D. Fla. Jan. 13, 2021), ECF No. [13]. Thereafter, on January 21,

2021, Plaintiff filed a Motion for Final Judgment on Writ of Garnishment. ECF No. [100]. Defendants did not object or file any response. On January 25, 2021, the District Court entered a Final Judgment on Writ of Garnishment, ordering Bank of America to make payment in the sum of $33,021.78 to Plaintiff. ECF No. [101].[3]

### A. Defendants' Motion To Quash

On February 23, 2021, Defendants filed their Motion to Quash, their first response to Plaintiff's efforts to collect on the Default Final Judgment. ECF No. [104]. Defendants argue that the writs of garnishments should be quashed, that the Order permitting Plaintiff to inspect the Bank of America safety deposit box should be vacated, and that Plaintiff should be ordered to disgorge $12,021.78 garnished from Bank of America. *Id.* at 1–2. Defendants rely on an April 2017 settlement agreement between the Parties (the "Settlement Agreement"). *See* ECF No. [104-1]. Pursuant to the Settlement Agreement, filed with the Court for the first time in connection with the instant Motion, Plaintiff agreed to accept $50,000.00 in full satisfaction of all claims. ECF No. [104] at 6. In addition, Plaintiff agreed to execute a satisfaction of judgment, which was to be held in escrow until Plaintiff received all amounts due under the Settlement Agreement. *Id.* ¶ 5.[4]

---

[3] Bank of America also advised that Defendant Moyal and his father (Avraham Moyal) jointly leased a safety deposit box. ECF No. [86] at 3. Upon a motion by Plaintiff, the District Court permitted the inspection of the safety deposit box. ECF No. [98]. Additionally, Plaintiff discovered three other accounts held jointly by Defendant Moyal and other non-parties to this action. *See* ECF No. [100] at 2. Plaintiff did not move for final judgment as to any of the property contained in the safety deposit box or the funds in the other accounts.

[4] Defendants were initially represented by counsel, but on February 8, 2017, the District Court granted counsel's Motion to Withdraw, ECF No. [51]. As a result, Defendants proceeded *pro se* through the execution of the Settlement Agreement. It was not until January 29, 2021, shortly after the entry of the Default Final Judgment on Writ of Garnishment, that an attorney appeared on Defendants' behalf. ECF No. [102].

It is undisputed that Defendants only paid $29,000.00, failing to pay the full amount agreed to in the Settlement Agreement. *Id.* at 4; ECF No. [105] at 5. When Defendants failed to make the remaining payments, Plaintiff began collection proceedings under the Default Final Judgment for the full $332,340.69, without any objection from Defendants. ECF No. [105] at 3.

Defendants now argue that although they breached the Settlement Agreement, Plaintiff was not entitled to conduct garnishment proceedings under the Default Final Judgment. ECF No. [104] at 6. Specifically, Defendants contend that the Default Final Judgment "merged" into the Settlement Agreement upon execution, and therefore, the Default Final Judgment has been "extinguished" as a matter of law. *Id.* As such, Defendants propose that the Parties' rights and obligations are governed exclusively by the Settlement Agreement, *id.* at 5–6, and that because Plaintiff has received more than the full $50,000.00 due under the Settlement Agreement, Plaintiff must be ordered to file a satisfaction of judgment and to disgorge the amounts collected in excess of $50,000.00 (a total of $12,021.78). *Id.* at 7–8

In its Response, Plaintiff maintains that it is entitled to collect $332,340.69, the full extent of the Default Final Judgment. ECF No. [105] at 3–4. First, Plaintiff argues that the Settlement Agreement did not replace or extinguish the Default Final Judgment, but instead that the Default Final Judgment remains valid and in effect. *Id.* at 5. Plaintiff notes that any payment received in excess of $29,000.00 was not voluntarily made, rather it was payment procured as a result of Defendants' breach of the Settlement Agreement which entitled Plaintiff to proceed with collecting the entire amount of the Judgment through garnishment proceedings. *Id.* Second, Plaintiff argues that Defendants are estopped from contesting the validity of the Final Judgment on Writ of Garnishment because Defendants did not object to the issuance of the writs, reply to the answer filed by Bank of America, seek to dissolve the writ, or seek to vacate or appeal the Final Judgment

4

on Writ of Garnishment. *Id.* at 6.  Accordingly, in Plaintiff's view, Defendants acquiesced to the validity of the Default Final Judgment by failing to object to the writs and to the Final Judgment on Writ of Garnishment. *Id.* at 8.  Finally, Plaintiff argues that because the Settlement Agreement contains a "time is of the essence" clause, Plaintiff had the right to enforce the Default Final Judgment immediately upon a breach of the Settlement Agreement. *Id.*

In their Reply, Defendants argue that they did not waive the right to contest the post-judgment proceedings because the Settlement Agreement contains a non-waiver clause.  ECF No. [107] at 6.  Defendants insist that they do not contest the validity of the Default Final Judgement, rather they claim that the Default Final Judgment merged with the Settlement Agreement.  *Id.* Defendants do concede, however, that the Court did not reserve jurisdiction to enforce the Settlement Agreement, and as a result, their only remedy under the Settlement Agreement would be to file a separate breach of contract suit in a court with competent jurisdiction. *Id.*  However, Defendants argue that Plaintiff would not have any contract damages because it has recouped the full amount due under the Settlement Agreement, and as a result, "justice requires" that Plaintiff disgorge the excess sums collected and that the District Court's Order permitting the inspection of the safety box be vacated. *Id.* at 8–9.

### B.  Defendants' Motion To Ratify

Having conceded that the Court has no jurisdiction to enforce the Settlement Agreement, Defendants filed their Motion to Ratify.  ECF No. [117].  Therein, Defendants request that this Court "ratify, adopt and approve the Settlement Agreement and retain jurisdiction to enforce its terms."  *Id.* at 1.  Defendants argue that because the Parties settled their claims, the Settlement Agreement is binding on all Parties and the Court. *Id.* at 4.  Specifically, Defendants submit that the validity of the Settlement Agreement is not affected by the fact that it was executed following

5

the entry of a judgment. *Id.* As such, Defendants submit that the Court should enter an order ratifying its terms and retaining jurisdiction to enforce the Settlement Agreement. *Id.*

On August 26, 2021, Plaintiff filed his Opposition. ECF No. [119]. First, Plaintiff argues that the Motion to Ratify should be denied because when Defendants breached the Settlement Agreement, Plaintiff's obligations under the Settlement Agreement were discharged. *Id.* at 4. Second, Plaintiff notes that Local Rule 16.4 does not apply because there is no pending case before this Court, but nevertheless, the Motion to Ratify violates the Local Rule as it was not filed, as required, within two days of settlement. *Id.* at 6. Finally, Plaintiff again argues that the Court does not have jurisdiction to enforce the Settlement Agreement. *Id.* at 6–7.

On September 1, 2021, Defendants filed their Reply. ECF No. [120]. Defendants maintain that because the Settlement Agreement is binding, "[t]he Court should retroactively approve, adopt and ratify the Settlement Agreement." *Id.* at 3. Thereafter, the Court would have jurisdiction to consider the terms of the Settlement Agreement and determine the rights and obligations of the Parties in accordance with the Agreement. *Id.* Furthermore, Defendants note that compliance with the Local Rules is immaterial because the Rules cannot render the Settlement Agreement void. *Id.* at 5. As such, Defendants submit that the Court must adopt the Settlement Agreement in order to properly "consider all the issues presented." *Id.*

**II.    ANALYSIS**

As a preliminary matter, the Court does not have jurisdiction to enforce the Settlement Agreement. Indeed, the Settlement Agreement was never filed, and the Court never retained jurisdiction to enforce it. *See Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1280–81 (11th Cir. 2012) (noting that where a district court does not enter an order retaining jurisdiction to enforce a settlement agreement, the parties' only recourse is to bring suit in state court). Having

recognized and conceded this issue, Defendants filed their Motion to Ratify after the Motion to Quash was fully briefed and argued, and more than four years after the Settlement Agreement was executed, in an attempt to cure the issue. Their attempt should be rejected.

As an initial matter, Defendants' Motion to Ratify runs grossly afoul of Southern District of Florida Local Rule 16.4. Specifically, Rule 16.4 states:

> If the parties reach an agreement to settle the entire case or certain claims or issues therein, counsel shall notify the Court of such settlement by filing and serving a notice of settlement within two (2) Court days of such agreement being reached. The notice shall be filed and served jointly by counsel for all parties to the settlement. Alternatively, the parties may file and serve a notice or stipulation, as applicable, pursuant to Fed. R. Civ. P. 41. But unless such notice or stipulation is filed within two (2) Court days of the parties reaching a settlement, the parties are still required to file and serve a separate notice of settlement.

The Parties here did not provide the Court a notice of settlement in accordance with Rule 16.4. Indeed, the Motion to Ratify comes years after the settlement and years after the case was closed. Defendants' argument in Reply, that the Local Rules cannot void the Settlement Agreement, is correct, but again, not the issue. The issue is whether this Court has jurisdiction to *enforce* the Settlement Agreement.

Putting aside the violation of the Local Rules, the Motion to Ratify ignores that the Court does not have subject matter jurisdiction to afford Defendants the relief they request. There is no dispute that the enforcement of this Settlement Agreement is a matter for the state courts. Nevertheless, Defendants now move the Court to extend its jurisdiction to enforce the Settlement Agreement. Defendants' request is without legal support, is not based on the intention of the Parties, or the Settlement Agreement itself.

Federal courts are courts of limited jurisdiction, as their power to preside over matters is derived from the Constitution or from federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994). Indeed, a federal court has subject matter jurisdiction to enforce a settlement agreement if the action is still pending and has not been dismissed. *U.S. Commodity Futures Trading Comm'n v. Vision Fin. Partners*, LLC, 232 F. Supp. 3d 1287, 1292 (S.D. Fla. 2017) (citing *Kent v. Baker*, 815 F.2d 1395, 1399–1400 (11th Cir.1987)). Moreover, under certain circumstances, a federal court may exercise ancillary jurisdiction to manage its proceedings and vindicate its authority so long as the matters are incidental to an action properly before the Court. *Kokkonen*, 511 U.S. at 378–80. For example, although enforcement of a settlement agreement is a matter of state contract law, a federal court may exercise its supplemental jurisdiction to enforce a settlement agreement if it retained jurisdiction to do so upon dismissal of the case. *Id.* at 381–82. Specifically, because the issues associated with ensuring compliance with a settlement agreement are separate and distinct from the underlying suit, a federal court may retain jurisdiction to enforce the agreement if the parties request that the court do so. *Id.* Upon the parties' agreement that a district court should retain jurisdiction to enforce a settlement agreement, the court must then specifically do so by order. *Anago Franchising*, 677 F.3d at 1275–80 (concluding that a district court retains jurisdiction over a settlement if it issues an order to that effect prior to the filing of a stipulation of dismissal or if the parties "condition the effectiveness of the stipulation on the district court's entry of an order retaining jurisdiction"); *see generally Kettel v. Phillips*, No. 14-81310-CIV, 2018 WL 3699340, at *1 (S.D. Fla. May 17, 2018), *report and recommendation adopted*, 2018 WL 3699300 (S.D. Fla. June 1, 2018) ("The Court's Order closing this case did not specify that it retained jurisdiction to enforce the terms of the settlement agreement, and 'mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of [a Court's] order.'") (quoting *Kokkonen*, 511 U.S. at 381) (alterations supplied). Here, this case is no longer being litigated before this Court. There is no dispute that the claims asserted by

Plaintiff were adjudicated and this case was closed. At that point, the Court's was divested of subject-matter jurisdiction over the merits of the case.

In support of their Motion to Ratify, Defendants rely on *Wagner v. Mack*, 422 So. 2d 1045, 1046 (Fla. 4th DCA 1982), where the trial court denied a party's motion to set aside a post-judgment settlement agreement. Defendants' reliance on *Wagner* is misplaced. In *Wagner*, the appellate court concluded that the parties were bound by a post-judgment agreement that rendered all issues in the litigation moot. *Id.* However, whether the parties can settle claims after the entry of a judgment, although well-settled, is not the issue here. In short, there is no legal basis for Defendants' request that the Court extend its jurisdiction over this breach of contract dispute.

In addition, the parties did not consent to the Court's exercise of jurisdiction, nor did the Settlement Agreement contemplate it. The record is clear that although the Parties settled shortly after the entry of the Default Final Judgment, they reached no agreement regarding the Court's retention of jurisdiction to enforce the terms of the Settlement Agreement. Indeed, multiple writs of garnishment were issued pursuant to the Default Final Judgment without any objection from Defendants. Defendants now, over four years after settlement and in attempt to enforce the Settlement Agreement, ask that the Court ratify, adopt, and approve the Settlement Agreement and retain jurisdiction to enforce its terms. This unilateral attempt by Defendants to seek enforcement of the Settlement Agreement before this Court is improper because the relief Defendants seek is nothing more than a state law breach of contract claim that this Court has no subject matter jurisdiction to address.[5] Given that the Court has no subject matter jurisdiction to enforce the

---

[5] The Court notes Plaintiff's argument that Defendants' breach of the Settlement Agreement discharged its obligations under the Agreement. ECF No. [119] at 4. Under Florida law, a material breach of a contract excuses the non-breaching party's performance under a contract. *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014) (citing *Indemnity Ins. Corp. of DC. v. Caylao*, 130 So.3d 783, 786 (Fla. 1st DCA 2014)). A material breach "goes 'to the essence

9

Settlement Agreement, and that the parties have not consented to the Court's jurisdiction, the Motion to Ratify should be **DENIED**.

The Court now turns to Defendants' argument that once the Parties settled, the Default Final Judgment was "extinguished" *as a matter of law*. Although there was no motion by the Parties or order of the Court that otherwise set it aside, Defendants maintain that the Parties' settlement erased the Default Final Judgment. In support of this contention, Defendants primarily rely on *Dakota County v. Glidden*, 113 U.S. 222 (1885). In *Dakota*, the Supreme Court considered whether an appeal becomes moot when the parties settle following the entry of a judgment. *Id.* at 224. In that case, a judgment was entered regarding interest due on construction bonds issued by Dakota County, which bore ten percent interest annually and became due in 1896. *Id.* While the appeal of the judgment was pending, the parties entered into a settlement agreement, whereby Dakota County took up the bonds subject to the judgment and issued new bonds bearing six percent interest annually and payable in 1902. *Id.* The plaintiff accepted the new bonds "in satisfaction of his judgment and of his old bonds," which were subsequently burned. *Id.* The Court concluded that when parties enter into a settlement agreement following a judgment, whether the action is extinguished is determined by "the terms of the compromise." *Id.* at 225. Specifically, the Court explained that pursuant to the settlement agreement, the old bonds were surrendered and destroyed, and new bonds were accepted in their place. *Id.* As such, the language of the settlement agreement, which the Court was interpreting, is what extinguished the judgment, not, as Defendant contends,

---

of the contract,' as opposed to the mere failure to perform some minor part of the contract." *Id.* (quoting *Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008)). Whether the breach discharged the obligation or whether there was no obligation to file the satisfaction of judgment pursuant to the terms of the Settlement Agreement itself goes to the interpretation and enforcement of the Settlement Agreement, which is not at issue here.

10

the fact that the Parties settled. The case simply does not stand for the broad proposition that judgments are extinguished automatically upon the settlement of claims.

Defendants also rely on *Valmont Industries, Inc. v. Yuma Manufacturing Company*, 50 F.R.D. 408, 409 (D. Colo. 1970). In *Valmont*, after conducting a bench trial, the court found in the plaintiff's favor, concluding that the plaintiff's patents were valid and had been infringed upon by the defendants. *Id.* The defendants subsequently appealed the judgment, and while the appeal was pending, the parties settled. *Id.* at 409. The settlement agreement provided that the plaintiffs were to "refrain from executing on the judgment while the agreement was in effect." *Id.* Thereafter, the defendants filed a motion for relief from judgment based on newly discovered evidence that the defendant's believed would have caused the court to reach an "opposite result at trial." *Id.* at 408. The court concluded that it could not entertain the motion for relief from judgment given the settlement agreement. *Id.* at 410. Specifically, the court concluded that the "judgment merged in this compromise agreement and is not subject to attack so long as the agreement is in effect." *Id.* Relying on the Supreme Court's holding in *Dakota*, the *Valmont* court noted that the settlement agreement superseded the judgment because the agreement encompassed the claims upon which the judgment was based. *Id.* at 410–11, *see also Protective Closures Co. v. Clover Indus., Inc.*, 394 F.2d 809, 811–13 (2d Cir. 1968) (concluding that a settlement agreement, which provides that the parties are to dismiss the underlying proceedings and the pending appeal extinguished the cause of action) (citing *Dakota*, 113 U.S. at 225); *Eagle Oil Co. v. Sinclair Prairie Oil Co.*, 105 F.2d 710, 713 (10th Cir. 1939) (concluding that a judgment is extinguished by a settlement agreement that states that the parties are to dismiss the action) (citing *Dakota*, 113 U.S. at 225). Again, the language that was in the agreement is what superseded the judgment, the judgment did not simply disappear because the parties settled. As with *Dakota*,

11

the holding in *Valmont* does not stand for the proposition that a judgment is extinguished *as a matter of law* when the parties settle. Indeed, in *Valmont,* the settlement agreement specifically provided that the parties would refrain from executing on the final judgment, a provision that is absent from this Settlement Agreement. Moreover, it appears that the court in *Valmont* had jurisdiction to enforce the agreement, which as noted above, is not the case here.

Finally, in their Notice of Supplemental Authority, ECF No. [113], Defendants cite to a bankruptcy case from Pennsylvania, which recites the general rule that a settlement agreement "extinguish[es] the asserted cause of action and to fix[es] rights, titles and interests of the respective parties in accordance with the agreement." *In re Sager*, 522 B.R. 83, 92 (Bankr. E.D. Pa. 2014), *aff'd in part, rev'd in part*, 2015 WL 1650654 (citing *Morris v. Gaspero*, 522 F.Supp. 121, 125 (E.D. Pa. 1981)). Additionally, in their Notice of Supplemental Authority and in their Reply, Defendants cite to *Wagner*, where the court concluded that the parties were bound by a post-judgment settlement agreement that was voluntarily executed. 422 So. 2d at 1046. The authority submitted is equally inapplicable because the cases cited discuss the impact of settlement on the substance of the claims between the parties. Indeed, the issue is not whether the Settlement Agreement is binding on the Parties, as Defendants suggest, the issue is whether this Court can enforce it. The Court already found that it cannot, and so now the Court considers a much narrower issue, namely whether the Default Final Judgment remains a valid order of this Court.[6]

---

[6] Plaintiff also filed Notice of Supplemental Authority, ECF No. [116], citing two cases that discuss the standard for vacatur of judgments post-settlement. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994) (addressing the standard for vacatur of a judgment following settlement where that vacatur would affect an appellate opinion); *Christiansen v. Coyle*, No. 2:14-CV-00025-JNP, No. 2017 WL 4712216, at *2 (D. Utah Oct. 18, 2017) (concluding that "postjudgment settlement agreement is not an exceptional circumstance warranting vacatur of a judgment") (citing *Bancorp*, 513 U.S. at 29). The citations provided are inapplicable to the issue here because Defendants do not seek to vacate the Default Final Judgment.

In each of these cases, the courts were interpreting and enforcing the settlement agreements at issue. Here, of course, the Court cannot do that because the Parties chose not to give the Court that authority, and the Court does not have jurisdiction to enforce the Settlement Agreement. As such, Defendants are left with the argument proposed, that the fact that there is a settlement extinguished the judgement as a matter of law. Unfortunately, for Defendants, there is simply no precedent for that position.[7] Indeed, the Settlement Agreement could also have included a provision requiring the Parties to move to reopen the case and set aside the Default Final Judgment. It does not have that provision. In fact, Defendants allowed Plaintiff to execute on the Judgment after the Settlement Agreement. Defendants' argument that they only allowed execution to the extent that Plaintiff's recovery was limited to the $50,000.00 settlement amount is their argument now but is nowhere in the record. Plaintiff's recovery is not attributed to Defendants' payment under the Settlement Agreement; rather, the recovery is attributed to Plaintiff's execution of the writs sought based on the Default Final Judgment through proceedings Defendants never objected to in any way.

The Court must review the procedural history of this case as it is, not as Defendants wish it were. As such, the Default Final Judgment continues to be a valid and enforceable order of this Court. To the extent that Defendants argue that the Settlement Agreement limits the amount that Plaintiff can recover, Defendants can certainly seek to have the Settlement Agreement enforced

---

[7] The Court proceeds with caution regarding interpreting the terms of the Settlement Agreement as the Court has no jurisdiction to enforce it. Nevertheless, at the hearing, Defendants' counsel highlighted a provision in the Settlement Agreement, which states that upon execution of the Agreement, Plaintiff was to execute a satisfaction of judgment to be held in escrow until Defendants completed payments under the Agreement. *See* ECF No. [104-1] ¶ 5. That provision, however, appears to support Plaintiff's position. Indeed, the plain terms suggest that Plaintiff had no obligation to file a satisfaction *until* Defendants fully complied with the terms of the Settlement Agreement. Because Defendants failed to make the required payments, there was no obligation to file the satisfaction, and the Default Final Judgment remains unsatisfied and an order of the Court.

13

by a court with jurisdiction to do so. Because the Court rejects Defendants' proposition that the Default Final Judgement was simply extinguished by virtue of the settlement, the Motion to Quash should be **DENIED**.

## III.  RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendants' Motions, ECF Nos. [104] and [117], be **DENIED**.

## IV.  OBJECTIONS

A party shall serve and file written objections, if any, to this Amended Report and Recommendation within **SEVEN (7) DAYS** of the filing of this Amended Report and Recommendation. The objection period has been shortened because the Parties had the benefit of oral argument and had the opportunity to submit supplemental authority. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on September 2, 2021.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE